[Sac. No. 321.   Department Two.—December 2, 1897.]

A. H. CREW and F. C. LUSK, Respondents, v. LIZZIE E. PRATT et al., Respondents.  DANIEL SULLIVAN et al., Appellants.

ESTATES OF DECEASED PERSONS—VALIDITY OF TRUST UNDER WILL—TERM OF YEARS—SUSPENSION OF POWER OF ALIENATION.—A trust provided for in a will which suspends the absolute power of alienation for a fixed term of years, not depending upon the duration of lives in

119  139
s119  134
119  157
119  139
120   83
119  139
a124   24
119  139
133  495
119  139
134  277

being, must be held invalid upon a direct appeal from a decree distributing the testator's estate to the trustees named in the will.

ID.—DECREE OF DISTRIBUTION TO TRUSTEES—PROCEEDING IN REM—FAILURE TO APPEAL—CONCLUSIVE ADJUDICATION OF VALIDITY OF TRUST—ACTION BY TRUSTEES.—The distribution of the estate of a deceased person is a proceeding *in rem*, and the action of the court in making the distribution binds the whole world, subject only to be reversed, set aside, or modified upon appeal; and a decree distributing the estate to trustees named in the will of the decedent, which has become final by failure to appeal therefrom, though erroneous, is a conclusive adjudication of the validity of the trust, and cannot be collaterally assailed by the heirs, legatees, or devisees, or their representatives, in an action brought by the trustees against them to have it adjudged that plaintiffs are the owners as trustees of the estate devised in trust to them, and that defendants have no estate in the premises exept as beneficiaries of the trust.

ID.—JURISDICTION OF SUBJECT MATTER—POWER OF ERRONEOUS DECISION—COLLATERAL ATTACK—SELECTION OF TRUSTEES AS DISTRIBUTEES—POWER TO DETERMINE VALIDITY OF TRUST.—Jurisdiction of the subject matter includes power to pronounce the resulting judgment over which the jurisdiction extends, and to decide wrong, as well as to decide right, so far as the validity of its judgment is concerned, as against a collateral attack; and a court having jurisdiction over the subject matter of the distribution of the estate of a deceased person, and to determine to whom, and in what proportions it shall be distributed, has power erroneously to select the trustees named in the will as distributees of the trust, and incidentally to determine the validity of the trust, and the lawfulness of the right of the trustees to take under the will, and its determination, though erroneous, can only be corrected upon appeal, and is not open to collateral attack.

ID.—PROBATE OF WILL—PROOF OF PUBLICATION IN DAILY PAPER.—A notice of the time fixed for the probate of a will is sufficiently proved to have been published in a daily paper for the requisite period by an affidavit showing that it was published in a paper purporting by its name to be a daily paper, daily for eleven days.

ID.—SETTLEMENT OF FINAL ACCOUNT AND DISTRIBUTION—PROOF OF POSTING NOTICE—AFFIDAVIT MADE UPON DAY OF POSTING—PRESUMPTION.—It is no objection to the jurisdiction of the court to settle the final account of executors, and to order distribution of the estate of a decedent, that the affidavit of the posting of the notice of the hearing was made on the day of the posting; but the presumption is that the notice remained posted during the statutory period.

ID.—RECITALS IN DECREE—DUE SERVICE OF NOTICE—COLLATERAL ATTACK.—Where a decree recites due service of notice by publication or by posting, such recital is sufficient to prove such service, as against a collateral attack.

ID.—APPEARANCE AT HEARING—WAIVER OF OBJECTION TO NOTICE.—The appearance or representation of all the heirs at the hearing on final distribution, is a sufficient answer to any objection to the sufficiency of the notice of the hearing.

APPEAL from a judgment of the Superior Court of Butte County and from an order denying a new trial. John C. Gray, Judge.

The facts are stated in the opinion.

Charles F. Hanlon, J. S. Spilman, and E. L. Campbell, for Appellants.

F. C. Lusk, McKinstry & McKinstry, Eugene R. Garber, J. D. Sproul, and S. F. Leib, *Amicus Curiae*, for Respondents.

SEARLS, C.—This action was brought in the superior court of the county of Butte against the heirs, devisees, legatees, and representatives of the heirs, devisees, and legatees of O. C. Pratt, deceased, who died testate October 24, 1891, being at the time of his death a resident of said Butte county, for the purpose of having it adjudged that the plaintiffs are the owners as trustees of certain premises in the complaint described, and that defendants have no estate in said premises except as *cestuis que trustent* of said trust, and to have it determined whether a certain trust under and pursuant to the last will and testament of said O. C. Pratt, deceased, whereby the plaintiffs herein were appointed trustees, etc., is valid or invalid, etc.

The cause was tried by the court and written findings filed, upon which a decree was entered declaring the trust to be a valid subsisting trust, that plaintiffs are the trustees thereof, and as such are entitled to the possession of the trust property as trustees, etc.

From this decree and from an order denying their motion for a new trial E. L. Campbell, guardian of the estates of Orville C. Pratt, 2d, and Annie M. Pratt, and E. L. Campbell, trustee, and Alice L. Lothrop, executrix of the last will and testament of Kate M. Pratt, deceased, and Daniel Sullivan and Frank N. Meyers, special administrators of the estate of Lucy C. Goodspeed, deceased, appeal to this court.

The last will of O. C. Pratt disposed of property of the value of over one million dollars. After bequeathing and devising certain specific parcels of property to his wife, children, brothers, sisters, etc., the testator, by the ninth subdivision of his will,

gave, devised, and bequeathed to A. H. Crew and Riland Goodspeed all the rest and residue of his property and estate, real, personal, and mixed, in trust, however, for the uses and purposes herein mentioned. By a codicil to the will F. C. Lusk was substituted a trustee in the place and stead of Riland Goodspeed.

As the problem involved in this case is founded upon said ninth subdivision of the will, we set it out in full, premising that the name of F. C. Lusk is to be substituted for that of Riland Goodspeed wherever the latter name occurs as trustee.

"Ninth. All the rest, residue, and remainder of all the property and estate, real, personal, and mixed, of every description and wheresoever situated, of which I may be possessed and to which I may be entitled at the time of my decease, I give, devise, and bequeath unto Riland C. Goodspeed, my son in law, and unto A. H. Crew, a banker, both of Butte county, California, in trust, however, for the following named uses and purposes, that is to say: To take possession of the same, and every part thereof, and pay, when due and payable, all lawful taxes and charges upon, and hold and manage the same for seven (7) years after my decease, by leasing, either for money rental, or in kind, in such manner as to them may seem most advantageous to my estate, to settle and pay all legal obligations outstanding against me, as well as such as may be incurred for my funeral expenses, and also to provide and turn over to Mrs. Lizzie E. Pratt, my wife, the sum of seven thousand five hundred dollars ($7,500) each year for the following seven years for her maintainance, the same to be paid in semi-annual installments of three thousand seven hundred and fifty dollars ($3,750) each, the first as soon after my decease as sufficient funds for the purpose shall come into their possession, and the remaining ones at the end of every six months afterward; and, second, to provide and turn over to Mrs. Kate M. Pratt, widow of my deceased son, Charles P. Pratt, of Fruitvale, Alameda county, California, the sum of twelve hundred dollars ($1,200) for the following seven (7) years for the maintenance of herself and two children, in semi-annual payments of six hundred dollars ($600) each, the first as soon after my decease as sufficient funds for the purpose shall come into their possession, and the remaining ones at the end of every six months afterward; and, third, to provide and turn over to each

of my stepdaughters, Mrs. Adele M. Kenney and Miss Lillian O. Jones, both of the city and county of San Francisco, as soon after my decease as sufficient funds for the purpose shall come into their possession, the sum of five hundred dollars ($500) to each of them for their and each of their maintenance respectively, and an equal amount to each of them every year afterward, for seven (7) years next following my decease. The foregoing payments, and each of them, are, after the payment of the annual taxes of the estate, to be a first charge upon and made out of any money to come into the hands of said trustees on account of my estate, as well as from rents, the sale of grain or other personal and mixed property belonging to and to belong to my estate; and thereupon said trustees are directed to pay annually for seven (7) years after my decease unto Mrs. Kate J. Achilles, of Rochester, New York, if she so long lives, the sum of five hundred dollars ($500); also to pay to Mrs. Alinda J. Bunster, of Victoria, British Columbia, annually for seven (7) years after my decease, if she so long lives, the sum of five hundred dollars ($500); also to pay to Mrs. Mary A. Putney, of Hartford, Michigan, annually for seven (7) years after my decease, if she so long lives, the sum of four hundred dollars ($400); also to pay to Alexander M. Pratt, of Janesville, Wisconsin, annually for seven (7) years after my decease, if he so long lives, the sum of five hundred dollars ($500); also to pay to Jonathan Pratt, of Janesville, Wisconsin, annually for seven (7) years after my decease, if he so long lives, the sum of five hundred dollars ($500); also to pay to Mrs. Frances L. Underwood, of Middlesex, Yates county, New York, annually for seven (7) years after my decease, if she so long lives, the sum of two hundred and fifty dollars ($250); and also to pay to James S. Pratt, lately of Durham, Butte county, California, annually for seven (7) years after my decease, if he so long lives, the sum of three hundred dollars ($300). The foregoing payments to the seven (7) persons last named are to be made subsequent and subordinate to the first four named out of money to come into the hands of said trustees on account of my estate, and from the proceeds of rents thereof, as well as from the sale of grain raised upon and belonging to, and to belong to, my said estate; and at the expiration of said seven (7) years said

trustees shall divide, turn over, and convey by proper conveyances all the real estate so holden in trust by them, together with all the personal and mixed property remaining in trust in their hands, to the persons in the proportions and kind of estate hereinafter named, that is to say, first, unto Mrs. Lizzie E. Pratt, my wife, for and during her life, a life estate in and to one-half of my real estate, wheresoever situated, but not herein specifically devised; and the rest, residue, and remainder of my interests therein, and every part thereof, after her decease, unto my son, Orville C. Pratt, Junior, and unto his heirs and legal representatives in fee simple absolute; and said trustees shall divide one-half of the remaining personal and mixed property equally between my said wife and son; second, to Mrs. Lucy C. Goodspeed, my daughter, one-quarter of the real estate in fee simple, absolute, and one-quarter of the personal and mixed property; and to Orville C. Pratt, second, and Annie M. Pratt, children of my deceased son, Charles P. Pratt, one-eighth to each of the real estate in fee simple absolute, and divide equally between them one-quarter of the personal and mixed property."

The will from which the foregoing extract is made was admitted to probate in the superior court of the county of Butte on the seventeenth day of November, 1891, and John Bidwell and A. H. Crew were appointed and qualified as executors thereof. Such proceedings were thereafter had in the matter of said estate of O. C. Pratt, deceased, in said court, that said estate was ready for settlement and final distribution, and on the third day of April, 1893, the executors of said will filed in said court their final account, their final report, and a petition for the final distribution of said estate.

The petition was set for hearing on the first day of May, 1893, notice thereof duly given as required by law, and on said first day of May, 1893, the hearing of said petition was regularly continued by said court until the nineteenth day of May, 1893, at which last-named date, after due proceedings had, the petition for distribution was regularly heard by the court, and thereupon said court made and rendered its final decree of distribution.

The decree is in the usual form and is full in its recitals of the proceedings theretofore had in admitting the same to probate

and the subsequent acts thereunder, the settlement of the accounts, the filing of the petition for distribution, the giving of notice thereof, the proof thereof, etc.

It further recites that at the hearing of the petition for distribution "the executors are present in court with their attorney, F. C. Lusk; the absent and minor heirs are represented by their attorney, Warren Sexton. Mrs. Lucy C. Goodspeed, one of the heirs of said deceased and a party interested in said estate, is represented by her attorney, Charles F. Hanlon. Mrs. Lizzie E. Pratt, the widow of said deceased, is present in court and represented by her attorneys, Lloyd & Wood. O. C. Pratt, Jr., is represented in court by his general guardian, said Lizzie E. Pratt, and Lloyd & Wood, her attorneys, as such guardian."

After distributing the property devised and bequeathed as in the will provided, it proceeds as follows:

"Sixth. All the rest, residue, and remainder of all property, and estate, real, personal, and mixed, of every description and wheresoever situated, of which said deceased was possessed, or to which he was entitled at the time of his death, is hereby distributed to A. H. Crew and F. C. Lusk, of Chico, California, in trust, however, for the following named uses and purposes, that is to say, to take possession of the same and every part thereof," etc.

Then follows the uses and purposes to which, as trustees, they are to devote the property, precisely as in the last will specified, with a description of the property so distributed to said Crew and Lusk as trustees.

The decree of distribution was duly entered and filed in said court on the twenty-seventh day of May, 1893, and was thereafter duly recorded in all the counties of this state in which any part of the property affected thereby was situated. No appeal has ever been taken from said decree of distribution, and the time for an appeal therefrom had expired long before this action was brought.

The executors delivered the property so distributed to said trustees to them, and they have since possessed and held the same, and have acted and are still acting under the terms of said trust and administering the same according to the terms thereof, and each of the persons mentioned as being entitled to receive annuities from said trust has received and accepted from said

trustees, the plaintiffs herein, sums of money on account of such annuities, in amount sufficient so that each annuitant has received and accepted from said plaintiffs, as such trustees, at least one year's annuity according to the terms of said trust.

The estate of O. C. Pratt was finally closed, settled, and the executors of the will were finally discharged from their trust as such May 7, 1894. The trustees have rendered and had settled three annual accounts under their trusteeship, and the term of the trust will expire by its own limitation in 1898.

There is no material conflict in the evidence, and the findings are substantially in favor of the plaintiffs, supporting all the material allegations of their complaint. Aside from some minor questions, which upon a review of the record we regard as of little moment, there are two important questions involved in the case. They are as follows: 1. Was the trust created under the will of O. C. Pratt void under the doctrine enunciated in *Estate of Walkerly*, 108 Cal. 627? 2. If the first proposition be decided in the affirmative, then is the final decree of distribution such a conclusive adjudication of the validity of the trust that it cannot in this collateral inquiry be impeached by the appellants who were parties thereto?

In reference to the first proposition no lengthened discussion is deemed necessary. Section 715 of the Civil Code is as follows: "The absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition, except in the single case mentioned in section 772."

Section 772 relates to the creation of a contingent remainder in fee, upon a prior remainder in fee, has no application to the case in hand, and need not be further mentioned. Section 716 of the same code is as follows: "Every future interest is void in its creation which by any possibility may suspend the absolute power of alienation for a longer period than is prescribed in this chapter (chapter 2 of title 2, part I, Civil Code). Such power of alienation is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed."

In the present instance, the trust estate created by the will of Pratt is not limited to the life or lives of persons in being, but

extends to seven years, during which period the absolute power of alienation is suspended.   In this respect it only differs from the case of *Estate of Walkerly, supra,* where the trust was adjudged to be void, in this, that there the power of alienation was suspended for not less than twenty-five years, while here it is limited to seven years.   It is said that in the present case it was conceded in the court below that the trust was void, as against a direct appeal, and it is tacitly conceded here.

We think the case in this respect as to a portion of the beneficiaries squarely within the rule enunciated in *Estate of Walkerly, supra,* and shall therefore assume that the trust was in violation of the law against the creation of perpetuities, which will not countenance the suspension for any fixed period of years, not depending upon the duration of life, since, during the time of such limitation, however short, the persons capable of conveying the interest might die.   We assume, therefore, that the trust would have been held void upon a direct appeal from the decree of distribution.

This brings us to the question involved in the second and more important proposition, relating to the effect of the final decree of distribution.

In the Walkerly case, an appeal was taken to this court from the decree of distribution, and the inquiry was founded upon a direct proceeding assailing the validity of the decree.

In the case at bar, no appeal was taken from the final decree of distribution, which, by lapse of one year, became final, and is not now open to direct attack; and the question is, Can it be assailed collaterally by the heirs, legatees, or devisees, who were parties thereto?

Section 1666 of the Code of Civil Procedure, after providing that the decree of distribution shall name the persons and proportions to which they shall be severally entitled, etc., proceeds as follows: "Such order or decree is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal."

Section 1908 of the Code of Civil Procedure is as follows: "The effect of a judgment or final order in an action or special proceeding before a court or judge of the state, or of the United States, having jurisdiction to pronounce the judgment or order, is

as follows: 1. In case of a judgment or order against a specific thing, or in respect to the probate of a will, or the administration of the estate of a decedent, or in respect to the personal, political, or legal condition or relation of a particular person, the judgment or order is conclusive upon the title to the thing, the will, or administration, or the condition or relation of the person; 2. In other cases, the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding."

The contention of appellant is that three things are essential to validate a judgment: 1. Jurisdiction of the person; 2. Jurisdiction of the subject matter; 3. Power under the law to pronounce the resulting judgment.

The argument is, that the third essential above mentioned is made the subject of the special care of the legislature in section 1908, quoted *supra*, wherein it is provided that: "The effect of a judgment or final order in an action or proceeding before a court or judge of this state, or of the United States, having jurisdiction to pronounce the judgment or order, is as follows," etc.

Law-writers and courts, in treating of jurisdiction, have usually contented themselves with saying that, where courts have jurisdiction of the person and of the subject matter of the controversy, their judgments, if erroneous, are voidable, but not void. That is to say, they are open to direct attack as upon appeal, but not to collateral attack.

In thus defining jurisdiction of the subject matter, it must be understood that the power to pronounce the resulting judgment constitutes a part of the subject matter over which the jurisdiction extends.

In *United States v. Arredondo*, 6 Pet. 691-709, the supreme court of the United States defined jurisdiction to be "the power to hear and determine."

In *Ex parte Reed*, 100 U. S. 13-23, the same court defined it to be "the power to hear and determine and give the judgment rendered."

The court said: "We do not overlook the point that there must be jurisdiction to give the judgment rendered, as well as to hear and determine the case. If a magistrate, having authority to fine for assault and battery, should sentence the offender to be imprisoned in the penitentiary, or to suffer the punishment prescribed for homicide, his judgment would be as much a nullity as if the preliminary jurisdiction to hear and determine had not existed."

Other and later cases in the same court have in substance laid down a like definition of jurisdiction, and fortified the definition by like reasoning and comparison. (See, also, *Ex parte Giambonini,* 117 Cal. 573.)

Was there, then, in the present case a defect of jurisdiction as to anything that was done? Beyond that question, in this collateral attack upon the decree of distribution made and entered in the superior court, beyond this power or jurisdiction, we need not look.

It may be stated, as a general proposition, that a judgment is conclusive, not only as to the subject matter in controversy in the action upon which it is based, but also in all other actions involving the same question, and upon all matters involved in the! issues which might have been litigated and decided in the case; the presumption being that all such issues were really met and decided. (Freeman on Judgments, sec. 253; *Parnell v. Hahn,* 61 Cal. 131; *Lillis v. Emigrant etc. Co.,* 95 Cal. 553; *Woolverton v. Baker,* 98 Cal. 631; *Howell v. Budd,* 91 Cal. 342; *Burris v. Kennedy,* 108 Cal. 338; *Estate of Hudson,* 63 Cal. 457.)

In *Auguisola v. Arnaz,* 51 Cal. 435, it was said probate courts have exclusive jurisdiction of the final distribution of the estates of decedents.

And such decree of distribution of an estate, after due notice by the probate court, is conclusive upon a person who might have claimed that a share of the estate belonged to him. (*Freeman v. Rahm,* 58 Cal. 111; *Daly v. Pennie,* 86 Cal. 552; 21 Am. St. Rep. 61; *Estate of Griffith,* 84 Cal. 107.)

The late case of *William Hill Co. v. Lawler,* 116 Cal. 359, is an instructive one upon this point. For the sake of brevity we quote from the syllabus, which conveys fairly well the substance

of the opinion: "The distribution of the estate of a deceased person is a proceeding *in rem*, and every person who may assert any right or interest therein is required to present his claim to the court for its determination, and the action of the court in making the distribution binds the whole world, and is equally conclusive upon every claimant, whether his claim is presented or whether he fails to appear, subject only to be reversed, set aside, or modified upon appeal, and its decree cannot be collaterally attacked for any error committed therein." (See, also, *Estate of Hinckley*, 58 Cal. 457.)

The case of *Greenwood v. Murray*, 26 Minn. 259, is a case on all fours with the one at bar. It was there held that a decree of the probate court assigning to a devisee the property devised establishes conclusively its validity as against all persons interested in the estate, unless an appeal is taken, and if assigned to a trustee in trust the decree establishes the validity of the trust. The will in that case devised certain real estate to Murray in trust, to sell the same five years after the death of the testatrix, and to pay the proceeds to certain persons named.

The appellate court held the devise void, as illegally suspending the power of alienation, but that the decree of distribution holding it valid could not be collaterally attacked. Counsel for appellants contend that this last case is in part overruled in the case of *Farnham v. Thompson*, 34 Minn. 330; 57 Am. Rep. 59. We do not so read *Farnham v. Thompson, supra.* The only point decided there at all pertinent to the Murray case, was that the probate court had no authority "to determine a controversy between an heir or devisee and a third party claiming from him, and not claiming as heir or devisee." *Greenwood v. Murray, supra*, is affirmed as authority in the late case of *Ladd v. Weiskopf*, 62 Minn. 29.

Freeman, at section 257 of his work on Judgments, says: "If a party is entitled to property only by virtue of its devise to him, a decree distributing it to him is conclusive of the devise and its validity."

"A judgment of a court having jurisdiction of both the subject matter and the parties, however erroneous it may be, is a valid, binding, and conclusive judgment as to the matter in con-

troversy upon the parties thereto and to those claiming under them, and cannot be attacked or impeached in a collateral proceeding." (Herman on Estoppel, sec. 366.)

The subject matter upon which the court was called to act in the present instance was the settlement of the final account and distribution of the estate of O. C. Pratt, under his last will. To make the final distribution under section 1666 of the Code of Civil Procedure, "the court must name the persons and the proportions or parts to which each shall be entitled."

As an incident of this duty, it devolved upon the court to determine whether or not there was a valid trust created by the will, and whether the respondents were lawfully created the trustees thereof. The court could not dispose of this question without passing upon the validity of the trust. It was the fulcrum upon which that branch of the case turned. Had the court held the trust invalid, it is not doubted but that its jurisdiction so to do could be upheld. "The jurisdiction to pronounce the judgment or order" mentioned in section 1908 of the Code of Civil Procedure means the right or power of the court to adjudicate upon the point at all, which is the vital question.

This question was determined in the affirmative, and it must be held that the court, so far as the validity of its judgment is concerned and against a collateral attack, has the same abstract right to decide wrong as to decide right. In other words, it is not the result reached which determines whether or not the judgment is void, but the power or authority which we call jurisdiction and which lies behind the mere conclusion that determines the question.

To decide wrong, where authority exists to pronounce judgment, is error, which can only be corrected by appeal, etc. To decide wrong, where no jurisdiction exists to pronounce judgment of the character involved, renders the adjudication void, and it can be attacked anywhere and collaterally.

In the present case, we are of opinion it was, under the law, the duty of the court to adjudicate the question of the validity of the Pratt trust, and that having done so and adjudged it to be valid, while its conclusion was erroneous and the judgment open to reversal on appeal, yet as no appeal was taken therefrom and

as the time therefor has long since expired, it is not now open to collateral attack.

In the seven briefs on file there is a large citation of authorities pro and con. Much time has been taken up in their examination, and it would be agreeable to discuss them in detail and group them around the different principles involved, showing, as we think may be done, where, with two or three exceptions, they are properly differentiated from the case in hand. To do so, however, would consume more space than is warranted. There are two other points calling for brief notice. It is urged by appellants that the decree of distribution is void: 1. Because the will was not admitted to probate on the notice required by law; 2. That the proof of the posting of notice of the application was insufficient to warrant the decree of distribution.

Upon the first point the objection is that "the proof of publication of notice of probate does not show that the *Chico Daily Enterprise* (in which the notice was published) is a newspaper, nor how often the paper was published, whether daily, weekly, semi-weekly or tri-weekly."

Under section 1303 of the Code of Civil Procedure, notice of the probate of a will is to be given by the clerk by publishing the same in a newspaper of the county, if there is one. If published in a weekly newspaper, it must appear therein on at least three different days of publication. If in a newspaper published oftener than once a week, it shall be so published that there must be at least ten days from the first to the last day of publication, both the first and last day being included.

In the present case, "Watson Chalmers, of said Butte county, being duly sworn says . . . . that he is the printer and publisher and proprietor of the *Chico Daily Enterprise*, a newspaper published in said Butte county . . . . and that the notice of the time and place of proving will . . . . has been published daily in the above-named newspaper, commencing November 5, 1891, and ending November 16, 1891, both days inclusive," etc.

This affidavit shows that the notice was published daily for eleven days, which is one day in excess of the requirement of the statute. The name of the paper is the *Chico Daily Enterprise*, and, if the notice was published therein daily, it must have been a daily paper.

The objection made to the affidavit of posting the notice of time fixed for hearing on settlement of final account and distribution is that the affidavit was made on the day of the posting, viz., April 4, 1893, whereas it is claimed it should have been made at the expiration of the time for which the notice was published.

We might rest with saying, in answer to both these attacks upon the sufficiency of the proofs of publication and notice, that the decrees in each case recite due service by publication and posting, which is, as against a collateral attack, sufficient.

But, waiving this, when an affidavit is made of posting a notice as required by the code, the presumption is that it remained posted during the statutory period. (*Estate of Sbarboro*, 70 Cal. 147.)

It has also been stated herein that all the heirs appeared or were represented at the hearing on final distribution, which is a sufficient answer to any objection to the sufficiency of the notice.

We recommend that the judgment and order appealed from be affirmed.

Belcher, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

McFarland, J., Temple, J., Henshaw, J.

Hearing in Bank denied.