[Civ. No. 2248. Fourth Appellate District.—February 27, 1939.]

In the Matter of the Estate of HANNE MADSEN, Deceased. HELEN CROW, Appellant, v. MARTIN C. MADSEN, Respondent.

Chester R. Andrews and John J. Gallagher for Appellant.

H. E. Barbour and W. B. Backlund for Respondent.

BARNARD, P. J.—This is an appeal from an order approving and settling the final account of an executor.

Hans Madsen died intestate on March 22, 1936, leaving surviving his widow, Hanne Madsen, and one son, Martin C. Madsen, who was appointed administrator of the estate. On March 26, 1936, the widow signed an instrument purporting to assign her interest in the estate to Martin C. Madsen and directing the court to distribute the same to him. All of the property of said estate was later distributed to Martin C. Madsen by a decree of distribution filed on October 10, 1936, which decree has become final.

On November 10, 1936, Hanne Madsen, the widow, died leaving a will dated April 27, 1936, whereby she bequeathed to Helen Crow, the appellant herein, the sum of $3,100. She gave, devised and bequeathed all of the rest of her property to her son Martin C. Madsen, the respondent herein, nominating him as the executor of said will to serve without bonds. He was appointed executor of her estate and in due course filed an inventory and appraisement and, later, a final account, in both of which he set forth that no money or property of any kind had come into his hands as such executor.

■ The appellant filed objections to said final account alleging, among other things, that Martin C. Madsen had obtained from Hanne Madsen the purported assignment of her interest in the estate of Hans Madsen by fraudulent representation; that this assignment was void; that the said Martin C. Madsen had wrongfully failed to account in the estate of Hanne Madsen for that part of the property belonging to the estate of Hans Madsen which should have been distributed to Hanne Madsen; and that he had converted this property to his own use. Martin C. Madsen filed a demurrer to said objections upon the ground that the probate court had no jurisdiction to pass upon the question thus raised. This demurrer was sustained and thereafter an order was entered approving and settling the final account of Martin C. Madsen as executor of the last will of Hanne Madsen, from which order this appeal was taken.

The appellant particularly relies upon *Bauer* v. *Bauer*, 201 Cal. 267 [256 Pac. 820], and *Estate of Roach*, 208 Cal. 394 [281 Pac. 607]. These cases, following earlier decisions, lay down the rule that a superior court, sitting in probate, has jurisdiction to determine as against an executor the amount of money or property of the estate that has come into his hands for the purpose of charging him therewith and, in determining that question, to determine all issues necessarily incidental thereto. It is argued that these cases are controlling here since the instant case involves a claim of ownership of property made by the executor as against the estate.

This rule has been applied in cases where it was contended that deeds or assignments, under which an executor or administrator claimed the property, had been fraudulently obtained. The jurisdiction of a probate court in such a case has been sustained upon the grounds that such a court has power to apply equitable principles in aid of and in carrying out its probate functions, and that it must necessarily have jurisdiction to determine what property has come into the hands of the executor, as such.

A somewhat different situation exists where it has already been judicially determined that certain property in the possession of the executor belongs to him personally. There is then no necessity for action, in so far as the probate court is concerned, at least until something else is done, something

which calls for the exercise of a general equity jurisdiction. This was recognized in *Bauer* v. *Bauer, supra,* where the court called attention to the fact that " 'It is self-evident that this is not a case where extrinsic fraud practiced upon the probate court has conferred jurisdiction upon the superior court as a court of equity to interpose and furnish relief from a final order of the court in probate.' "

■ It is well settled that a decree of distribution which has become final is conclusive as to the rights of those interested in the estate. (*Manning* v. *Bank of California,* 216 Cal. 629 [15 Pac. (2d) 746] ; *Goad* v. *Montgomery,* 119 Cal. 552 [51 Pac. 681, 63 Am. St. Rep. 145] ; *Crew* v. *Pratt,* 119 Cal. 139 [51 Pac. 38].) In the last-named case, it is said: " 'The distribution of the estate of a deceased person is a proceeding *in rem,* . . . and the action of the court in making the distribution binds the whole world, and is equally conclusive upon every claimant, whether his claim is presented or whether he fails to appear, subject only to be reversed, set aside, or modified on appeal, and its decree cannot be collaterally attacked for any error committed therein.' "

■ It is, of course, equally well settled that where, through extrinsic fraud practiced in probate proceedings, distributees have obtained property to which they are not entitled, equity will do justice not by overthrowing the decree of distribution but by declaring that the distributees hold the property in trust for the rightful owners. (*Simonton* v. *Los Angeles Trust & Sav. Bk.,* 192 Cal. 651 [221 Pac. 368] ; *Purinton* v. *Dyson,* 8 Cal. (2d) 322 [65 Pac. (2d) 777, 113 A. L. R. 1230] ; *Wingerter* v. *Wingerter,* 71 Cal. 105 [11 Pac. 853].) In *Campbell-Kawannanakoa* v. *Campbell,* 152 Cal. 201 [92 Pac. 184, 187], the court said: "This character of relief is very common in the matter of fraudulent probate proceedings. The order or decree from the effect of which relief is sought cannot constitute a bar to such equitable action. As has been said, it is solely because of the order or decree, collaterally unassailable and valid on its face, that the equitable jurisdiction is necessary and exists."

In *Security-First Nat. Bk.* v. *Superior Court,* 1 Cal. (2d) 749 [37 Pac. (2d) 69, 73], the trial court, sitting in probate, had entered an order vacating its previous orders settling and approving certain accounts. In annulling the order vacating the previous orders the Supreme Court said:

"Finally the respondents contend that the motion to vacate the orders may be considered as addressed to the equity powers of the probate court and that the respondent court had jurisdiction to set aside said orders on the ground that extrinsic fraud had been practiced in said proceedings. The probate court has no general equity jurisdiction. Its general jurisdiction is confined to the settlement of the estates of deceased persons. (*Burris* v. *Kennedy,* 108 Cal. 331 [41 Pac. 458]; *Estate of Hubbell,* 121 Cal. App. 38 [8 Pac. (2d) 530]; *Parkman* v. *Superior Court,* 77 Cal. App. 321 [246 Pac. 334].) It has the power, however, to apply equitable and legal principles in aid of its functions as a probate court. (11A Cal. Jur. 92, 93, and cases cited: see *Estate of Eilert,* 131 Cal. App. 409 [21 Pac. (2d) 630].) Consequently on a collateral attack the probate court is not vested with power to avoid its own orders or decrees which have become final on the ground that extrinsic fraud has been practiced in obtaining the order or decree. Such power is appropriately vested in a court having general equity jurisdiction." (Citing cases.)

An exactly similar situation is involved in the case now before us, with the single exception that an attempt to collaterally attack a decree of distribution which has become final is here made in a subsequent probate proceeding. This makes no difference in so far as the principle involved and the jurisdiction of the court are concerned, and we conclude that any relief to which the appellant was entitled was to be obtained through a proceeding in equity, and that the demurrer was properly sustained.

The order appealed from is affirmed.

Marks, J., and Griffin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 27, 1939.